J-A06033-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| PATRICK NEAL MAYE, JR., | : | |
| | : | |
| Appellant | : | No. 1072 WDA 2016 |

Appeal from the Judgment of Sentence June 24, 2016
in the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0016560-2013

BEFORE: BENDER, P.J.E., SHOGAN, and STRASSBURGER, JJ.*

MEMORANDUM BY STRASSBURGER, J.:               FILED MAY 21, 2018

Patrick Neal Maye, Jr. (Appellant) appeals from the judgment of sentence imposed following his conviction for possession with intent to deliver a controlled substance and possession of a controlled substance. We affirm.

The trial court summarized the relevant factual history of this matter as follows.

> On September 7, 2013, at approximately 2:30 a.m., Pittsburgh Police Officers Michael [Saldutte[1]] and Paul Abel were working security for several bars in the Station Square area of the City of Pittsburgh. As was their custom, they were walking through the parking lot to see that vehicles had departed from that area. The parking lot was almost vacant except for at the far end there was a car that was parked[. The officers observed

_____

[1] The trial court inadvertently mixed up the names of the officers. We have inserted the officers' proper names based upon the officers' testimony at the suppression hearing and bench trial.

* Retired Senior Judge assigned to the Superior Court.

a male] individual [climb] out of that car [and walk] around what appeared to be tires that were stored there. Based upon past experience, those [o]fficers knew that individuals who were carrying weapons often would go to this area of the parking lot to hide the weapons before they went into the bars and restaurants in the Station Square complex.

As the car proceeded to the exit of the parking lot, Officers [Saldutte] and Abel flashed their lights at the car in an effort to have the car stop[,] which, in fact, it did. As they approached the vehicle, they noticed several furtive movements being made by [Appellant], who was the driver of the car, in that he was moving his hands around underneath the driver's seat. The [o]fficers instructed him to keep his hands visible, which he refused to do. There was a passenger in the front who appeared to be passed out and there were two other individuals in the back. Both Officers [Saldutte] and Abel believed that [Appellant] may have been retrieving a gun from the tires and wanted to be sure he did not have a weapon. They asked [Appellant] to get out of the car and he was patted down to be searched for a weapon, but no weapon was found. However, in [Appellant]'s pants pocket the [o]fficers found [$2,881] dollars. Once all of the occupants had been removed from the vehicle, Officer [Saldutte] looked into the vehicle and saw several bundles of suspected heroin in the ashtray, which was open. This suspected heroin was observed by Officer [Abel] who then retrieved the suspected heroin and noted that the heroin was in rock or hard form.

Trial Court Opinion, 7/20/2017, at 1-4.

Appellant was arrested and charged with the above-referenced offenses. Prior to trial, Appellant filed a motion to suppress evidence, contending that the stop of his vehicle was unconstitutional. At the conclusion of the suppression hearing, the trial court denied Appellant's

motion to suppress without elaboration as to its reasons.[2]   On June 24, 2016, following a non-jury trial, Appellant was convicted and sentenced to two years' probation for possession with intent to deliver and no further penalty for possession of a controlled substance.   This timely-filed appeal followed.   Both Appellant and the trial court complied with the mandates of Pa.R.A.P. 1925.

Appellant presents the following issues for this Court's consideration: (1) whether the trial court erred in denying his suppression motion; and (2) whether the evidence was sufficient to establish constructive possession of the heroin found in the vehicle.   Appellant's Brief at 5 (re-ordered for ease of disposition).

We consider Appellant's suppression claim mindful of the following.

_____

[2] A trial court has a duty to explain its factual findings and conclusions of law on the record at the conclusion of the hearing.  Pa.R.Crim.P. 581(I) ("At the conclusion of the hearing, the judge shall enter on the record a statement of findings of fact and conclusions of law as to whether the evidence was obtained in violation of the defendant's rights, or in violation of these rules or any statute...").  Although in this case the trial court's failure to abide by Rule 581 has not impeded our appellate review due to the trial court's subsequent explanation of its rationale in its Pa.R.A.P. 1925(a) opinion, both our Supreme Court and this Court have strongly disapproved of trial court's failure to abide by Rule 581's "unambiguous mandate."   See Commonwealth v. Millner, 888 A.2d 680, 688 (Pa. 2005) (explaining the purpose of the rule); Commonwealth v. Grundza, 819 A.2d 66, 68 n.1 (Pa. Super. 2003) ("We note that the filing of a 1925(a) opinion is no substitute for the failure to make findings of fact and conclusions of law on the record at the conclusion of a suppression hearing in accordance with Pa.R.Crim.P. 581(I).").

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where … the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the court[] below are subject to our plenary review.

Commonwealth v. Perel, 107 A.3d 185, 188 (Pa. Super. 2014) (quoting

Commonwealth v. Jones, 988 A.2d 649, 654 (Pa. 2010)).

Appellant argues that the trial court erred by not suppressing the heroin observed in plain view because the police lacked reasonable suspicion to stop his vehicle in the first place. Article I, § 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution both protect people from unreasonable searches and seizures. Commonwealth v. Lyles, 97 A.3d 298 (Pa. 2014). We have explained there are three levels of interaction between police officers and citizens, each with a different level of justification required to initiate the interaction:

The three levels of interaction are mere encounter, investigative detention, and custodial detention. A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. A mere encounter does not carry any official compulsion to stop or respond to police, and as a result, does

not need to be supported by any level of suspicion. In contrast, an investigative detention carries an official compulsion to stop and respond. The detention is temporary, but it must be supported by specific and articulable facts creating a reasonable suspicion that the suspect is engaged in criminal activity. The test for reasonable suspicion is an objective one: … whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. Regarding the stop, a police officer may, short of an arrest, conduct an investigative detention if he has a reasonable suspicion, based upon specific and articulable facts, that criminality is afoot. The assessment of reasonable suspicion, like that applicable to the determination of probable cause, requires an evaluation of the totality of the circumstances, with a lesser showing needed to demonstrate reasonable suspicion in terms of both quantity or content and reliability. Finally, an arrest or custodial detention must be supported by probable cause.

To determine if an interaction rises to the level of an investigative detention, i.e., a Terry stop,[3] the court must examine all the circumstances and determine whether police action would have made a reasonable person believe he was not free to go and was subject to the officer's orders. To guide this crucial analysis, the United States Supreme Court has devised an objective test entailing whether, in view of all surrounding circumstances, a reasonable person would believe he was free to leave. In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained. No single factor should control this determination, and courts must examine the totality of the circumstances when reaching a conclusion as to whether a seizure occurred.

Commonwealth v. Guzman, 44 A.3d 688, 692-93 (Pa. Super. 2012)

(internal citations and quotation marks omitted).

_____

[3] Terry v. Ohio, 392 U.S. 1 (1968).

In his brief, Appellant takes issue with the trial court's failure to identify the exact moment when Appellant was seized. Appellant's Brief at 36. Appellant maintains that his encounter with Officers Abel and Saldutte was a seizure from its inception, arguing that once multiple, uniformed police officers approached his car in a parking lot, flashed their flashlights to get the car to stop and not exit the parking lot, and stood alongside his car with one officer on each side, with the passenger side officer immediately illuminating the interior of the car with a flashlight, no reasonable person would feel free to leave. Id. at 29, 32-38. Further, based upon his contention that he was seized from the outset of the encounter, Appellant argues the officers needed sufficient reasonable suspicion of criminal activity separate from Appellant's subsequent furtive movements. Id. at 41. Appellant contends that such reasonable suspicion was lacking in this case, and the officers stopped the car based upon an unparticularlized assumption or hunch. Id. at 42-47.

We agree with Appellant that the trial court failed to make a specific finding as to when Appellant was detained. Determining the moment of seizure "with precision is crucial to the constitutional analysis." Commonwealth v. Mackey, 177 A.3d 221, 228 (Pa. Super. 2017). "[T]he police must have reasonable suspicion at the moment of detention; information developed after a police-citizen encounter moves from consensual to coercive cannot be used to justify the detention." Id.

Based upon our review, there were three stages to the encounter: (1) the initial stage when the officers flashed their flashlights and approached the car to inquire about Appellant's presence in the closed parking lot; (2) the second stage when the officers instructed Appellant and the occupants to get out of the car subsequent to observing Appellant's furtive movements; and (3) the third stage when Officer Saldutte got in the car after frisking Appellant and observed heroin in plain view in the ashtray.

In its Rule 1925(a) opinion, the trial court initially referenced its determination that the police officers had justifiable reasonable suspicion based upon their belief that someone in the car may have retrieved a hidden gun from the tires, suggesting that the encounter was an investigative detention from the outset of the first stage. Trial Court Opinion, 7/20/2017, at 6-7. Later, the trial court stated that the police officers removed the passengers of the vehicle to conduct a Terry stop after they grew concerned about Appellant's furtive movements, suggesting that the encounter did not become an investigative detention until the second stage. Id. Therefore, it is unclear from the trial court's Rule 1925(a) opinion the point at which the trial court determined a seizure occurred and the precise facts the trial court relied upon to conclude the officers had reasonable suspicion.

Appellant is correct that if he was seized from the outset of stage one, the police officers needed reasonable suspicion that criminal activity was afoot prior to observing Appellant's furtive movements in the car during

stage two. See Mackey, 177 A.3d at 228. However, assuming arguendo that Appellant was seized from the outset of the encounter when the police officers flashed their flashlights and approached either side of the car, the officers already had developed sufficient reasonable suspicion to justify the stop. It was 2:30 a.m. N.T., 4/6/2016, at 4. The parking lot was on private property and all of the businesses were closed. Id. at 16. Appellant's car was located in the far corner of the parking lot in an area where cars normally do not park, near a storage facility with construction equipment, salt for the winter, other gravel, railroad ties, and tires. Id. at 4. The officers observed a male walk in front of the stopped vehicle and over to a pile of tires. Id. Officer Abel saw the male reach near his waist and "go down" near the tires. Id. at 10. Officer Saldutte observed the male linger by the tires for a few seconds. Id. at 17-18. The male appeared to be "messing around with the tires." Id. at 4. This roused the officers' suspicion that he might be retrieving a firearm from the tires. Id. at 5-6, 15-16. According to the officers, sometimes people hid their firearms before entering the clubs to avoid discovery of the firearms during a pat down. Id. Both officers previously had recovered hidden weapons around the property. Id.

Based upon the late hour, the presence of a car on private property after the businesses were closed near an area used for storage far from the clubs, the officers' observation of a person appearing to be messing around

with tires, and the officers' awareness of people commonly hiding weapons on the property while they were in the clubs, it was reasonable for the officers to conclude that criminal activity may have been afoot. We must give "due weight … to the specific reasonable inferences the police officer[s are] entitled to draw from the facts in light of [their] experience." Commonwealth v. Raglin, 178 A.3d 868, 872 (Pa. Super. 2018). Moreover, while the officers conceded that the male could have been urinating, the fact that there could be other explanations for the behavior does not automatically make the investigatory detention unlawful. Commonwealth v. Hayes, 898 A.2d 1089, 1094 (Pa. Super. 2006). See also Raglin, 178 A.3d at 872 ("[T]he totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.") (citation and quotation marks omitted). The totality of the circumstances was sufficient to establish reasonable suspicion that the occupants of the vehicle were engaged in criminal activity, even prior to observing Appellant's furtive movements below his seat or the heroin in plain view in the ashtray. Thus, the trial court properly denied Appellant's suppression motion.[4]

_____

[4] This Court is not bound by the rationale of a trial court and may affirm on
(Footnote Continued Next Page)

We next address Appellant's claim that the Commonwealth introduced insufficient evidence to demonstrate his constructive possession of the heroin. The standard we apply in reviewing the sufficiency of the evidence is

> [whether,] viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth as the] verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

Commonwealth v. Gonzalez, 109 A.3d 711, 716 (Pa. Super. 2015) (citation omitted).

To sustain a conviction for the crime of possession of a controlled substance, the Commonwealth must prove that Appellant knowingly or intentionally possessed a controlled substance without being properly registered to do so under the Controlled Substance, Drug, Device and Cosmetic Act (the Act). See 35 P.S. § 780–113(a)(16). The crime of possession of a controlled substance with intent to deliver requires the Commonwealth to prove an additional element: that Appellant possessed the

(Footnote Continued) ——————————

any basis. Comonwealth v. Turner, 73 A.3d 1283, 1286 (Pa. Super. 2013).

controlled substance with the intent to manufacture, distribute, or deliver it. See 35 P.S. § 780–113(a)(30). Appellant only challenges the element of possession.

Because the heroin was not found on Appellant's person, the Commonwealth was required to prove constructive possession.

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. … We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

Commonwealth v. Brown, 48 A.3d 426, 430 (Pa. Super. 2012) (quotation marks and citation omitted). The Commonwealth may establish constructive possession of an illegal substance by wholly circumstantial evidence. Commonwealth v. Johnson, 26 A.3d 1078 (Pa. 2011). Further, "[c]onstructive possession may be found in one or more actors where the item in issue is in an area of joint control and equal access." Commonwealth v. Mudrick, 507 A.2d 1212, 1213 (Pa. 1986).

The trial court offers the following in support of its determination that Appellant constructively possessed the heroin.

> The heroin was observed in plain view in the ashtray [that] was in the center console,[5] which meant that the two

_____

[5] When asked where the ashtray was located, Officer Saldutte initially referenced the center console, but continued in his answer to clarify that the ashtray was on the dashboard of the vehicle. N.T., 4/6/2016, at 19. On
(Footnote Continued Next Page)

individuals who had immediate access to that heroin were the driver and the front-seat passenger. [Appellant] was the driver of the automobile and the front-seat passenger was passed out, meaning that if anyone was to take control of the heroin, it would have been [Appellant]. It was also noted that a rental car agreement form was found in the car[,] which [indicated that Appellant] had rented the vehicle and also indicated that he, as with his passengers, were from Detroit. This fact is particularly significant since Officer Abel testified as an expert witness and indicated that there were two primary locations where heroin was shipped into Pittsburgh, the first being the New York/New Jersey area and the second being the Detroit/Canada area. Particularly significant about these locations is that hard or rock heroin is usually shipped from Detroit.

\* \* \*

[I]t is readily apparent that [Appellant] was not only in control of the vehicle that he had rented, but also the heroin that was in the ashtray. He had immediate access to it so that he could reach it without any difficulty, he knew it was there because it was exposed and seen in plain view by Officer [Saldutte,] and he had almost [$3,000] in cash on his person.

Trial Court Opinion, 7/20/2017, at 3-4.

Appellant contends these facts are insufficient to prove his constructive possession. He stresses that the individuals in the backseat of the car also had large sums of cash on them, albeit not as much as he, and all of the individuals in the car had ties to Detroit. Appellant's Brief at 15-16. He maintains that the Commonwealth proved only his ability to control the heroin, but not his intent to do so, arguing that the other individuals in the

(Footnote Continued) ————————————————

cross-examination, he testified that the open ashtray was in the center of the dashboard, facing out. Id. at 29-30.

- 12 -

car had equal access to the heroin and that he never attempted to handle or reach for the heroin. Id.

We do not find Appellant's arguments to be persuasive. The heroin was sitting in plain view mere inches away from Appellant's seat in the open ashtray on the dashboard. Although other people were in the car, "[p]ossession of the illegal substance need not be exclusive; two or more can possess the same drug at the same time." Commonwealth v. Macolino, 469 A.2d 132, 135 (Pa. 1983). Moreover, the only other person who would have been in arm's reach of the heroin was passed out. Thus, Appellant's access to and control over the open ashtray was greater than that of anyone else in the vehicle. See Commonwealth v. Stembridge (finding constructive possession despite the presence of others in the car because Stembridge had "access to and control over the area in which the contraband was found [that] was greater than that of the driver and the other passenger").

Additionally, after being stopped by the officers, Appellant acted nervous and made furtive movements. He was carrying a large sum of money on his person and was driving a rental car from an area known to supply heroin to the Pittsburgh market. The heroin was not packaged for immediate consumption; it was rock hard and packaged in the same fashion Detroit dealers typically use to transmit heroin to street dealers. N.T., 6/24/2016, at 14-15. Our review of the record shows that it was reasonable

for the trial court, sitting as factfinder, to conclude from the totality of the evidence presented that Appellant constructively possessed the heroin. Accordingly, Appellant's claim fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/21/2018